**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| CLEOPHIS BRAY, JR., | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:10-CV-00352 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint, filed by Plaintiff Cleophis Bray, Jr. on September 10, 2010, and aAugust 15, 2011Memorandum in Support of Summary Judgment or Remand [DE 21], filed by Plaintiff on February 1, 2011. Plaintiff requests that the August 28, 2009, decision of the Administrative Law Judge to deny his disability insurance benefits be reversed or, alternatively, remanded for further proceedings. For the following reasons, the Court grants the request and remands for further proceedings.

**PROCEDURAL BACKGROUND**

On April 14, 2008, Plaintiff filed an application for Supplemental Security Income and Disability Insurance Benefits, alleging a disability onset date of October 1, 2006. Plaintiff's applications were denied initially and upon reconsideration. On May 6, 2009, Plaintiff filed a timely request for a hearing and a hearing was held before Administrative Law Judge ("ALJ") Jose Anglada, at which Plaintiff, his attorney, Medical Expert ("ME") Charles Metcalf, and Vocational Expert ("VE") Lee Knutson appeared. On August 28, 2009, the ALJ issued a decision denying Plaintiff's applications. Plaintiff filed a Request for Review, and the Appeals Council denied this request on July 7, 2010, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

**A.  Background**

Born November 17, 1968, Plaintiff was 37 years old on the date of his alleged onset of disability and 41 years old on the date of the ALJ's decision. He completed the eleventh grade. Plaintiff's previous work experience was as a tire technician for sixteen years and as a maintenance man for three months.

**B.  Medical Evidence**

Between 2002 and 2003, Plaintiff was treated for a duodenal ulcer, hypertension, nausea, GERD, a peritonsillar abscess, abdominal pain, headaches, dysphagia, and acid reflux. On March 16, 2004, Plaintiff suffered an exacerbation of his ulcer, and, on January 2, 2005, Plaintiff was admitted to the Medical Center of Aurora for gastrointestinal bleeding as a result of the ulcer. On December 10, 2005, Plaintiff was again admitted to the hospital for hematuria.

On February 27, 2008, Plaintiff sought treatment for abdominal pain, rib pain, nausea, vomiting, and diarrhea with blood in his stools. The doctor prescribed Nexium and Zantac and diagnosed him with GERD, gastritis, abdominal pain, and a peptic ulcer. In March and April, 2008, Plaintiff's treating physician prescribed medicine for worsening duodenal ulcer, GERD, epigastric pain, esophagitis, and hypertension. On May 14, 2008, Dr. Sands, M.D., a state agency physician, reviewed Plaintiff's file and found that the evidence showed non-severe hypertension and ulcer

conditions.

On June 18, 2008, Plaintiff's nurse declined Plaintiff's request to fill out disability forms, explaining that Plaintiff's ulcers and GERD could be medically managed. The nurse noted that Plaintiff had leg pain with neuropathy and blurred vision. During July and August, 2008, Plaintiff received home health services, including weekly monitoring of his temperature, pulse, blood pressure, respiratory system, and weight.

On September 4, 2008, Plaintiff was diagnosed with erosive gastritis, esophagitis, and a hiatal hernia. On September 16, 2008, he received treatment for abdominal pain, hypertension, and obesity. On October 23, 2008, Plaintiff sought emergency room treatment for abdominal pain and blood in his stool and received a prescription for Bentzyl. On February 16, 2009, he again sought emergency room treatment for abdominal pain, increased blood pressure, neck and shoulder pain, and lightheadedness. He was prescribed Bentzyl and Miralax. On March 26, 2009, Plaintiff was treated for bronchitis. On April 14, 2009, Plaintiff's treating physician prescribed Lyrica and noted that Plaintiff's lack of insurance and financial resources prevented him from receiving medication, an ultrasound, or doppler testing.

**C.    Mental Health Evidence**

On March 5, 2008, Plaintiff underwent an initial evaluation with social worker Clarene King who suggested anger management treatment and assigned Plaintiff a global functioning score (GAF) of 50, and on March 6, 2008, Psychiatrist Sherrie Godbolt met with Plaintiff to provide assistance with anger management. Dr. Godbolt concluded that Plaintiff was cooperative and pleasant with mild depressive symptoms. She diagnosed him with intermittent explosive disorder, adjustment disorder, and assigned Plaintiff a GAF score of 60. She recommended anger management therapy

but did not prescribe Plaintiff any medication.

On May 20, 2008, state agency physician Dr. Shipley, Ph.D., reviewed the record and found no medically determinable mental impairment, and, on July 7, 2008, Dr. Neville, Ph.D., affirmed Dr. Shipley's findings.

From May 7, 2008, through April 29, 2009, Plaintiff attended group and individual therapy for anger. Plaintiff's social workers reported that he participated actively in a group setting and on multiple occasions recorded a GAF score of 50. Other written reports indicated a GAF score of 60. On December 10, 2008, Dr. Godbolt indicated that Plaintiff had a "good" ability to do most work-related activities and that he had a "fair" ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, behave in an emotionally stable manner, and relate predictably in social situations. On March 24, 2009, in a progress note, Dr. Godbolt assigned Plaintiff a GAF score of 50.

## D.     Plaintiff's Testimony

At the Administrative Hearing, Plaintiff testified that since 1997 he has suffered from ulcers, stomach bacteria, hypertension, bad nerves, numb legs, and acid reflux. He reported that he needed surgery for the acid reflux but could not afford it, even after receiving a medical card in 2008. Because of his stomach pain, Plaintiff testified that he cannot perform continuous activity for more than twenty minutes or walk for more than fifteen minutes. Plaintiff testified that he can sit for long periods of time but must slouch or lean back because of the bloating and pain in his stomach. He also indicated that his medications provide little comfort and that his pain at the time of the hearing was a ten out of ten. Plaintiff further indicated that he has difficulty bending over and can only lift five pounds due to his pain. In addition, he reported that it takes him nearly an hour to get dressed,

and sometimes he needs assistance with dressing. Plaintiff stated that he usually sits or lays in bed and watches television all day. He occasionally prepares meals, helps with the laundry, and takes public transportation. He also testified that he lives with his ill mother in her one story home.

**E.     Medical Expert Testimony**

Dr. Charles Metcalf, a specialist in internal medicine, testified as a medical expert at the Administrative Hearing. The ME noted the evidence of Plaintiff's ulcer disease, but testified that Plaintiff had no records relating to hospitalizations, no physician recommendation for surgery, and no physician opinion that Plaintiff could not work or was significantly limited physically. He observed that Plaintiff's mental health treatment consisted mostly of group therapy and that Plaintiff's psychiatrist, Dr. Godbolt, prescribed no medications. The ME agreed with Dr. Godbolt's initial analysis that Plaintiff's GAF score is 60 and explained that the GAF score of 50 recorded by the social workers appeared to be a clerical mistake. He testified that social workers are not qualified to assign a GAF score and that the medical evidence did not contain any findings that would preclude Plaintiff from working. However, he concluded that Plaintiff should not deal primarily with the public and should not be assigned work that required excessive co-worker interaction.

**F.     Vocational Expert Testimony**

At the Administrative Hearing, the ALJ asked the VE whether he could identify any jobs that could be performed by an individual with Plaintiff's age, education, and work experience with the following additional limitations: lifting 20 pounds occasionally and 10 pounds frequently; sitting for six hours and standing or walking for two hours total in an eight-hour workday; only postural movements; and minimal contact with the public, co-workers, and supervisors. The VE testified that

such an individual could perform 3,800 jobs as a machine tender, 1,700 jobs as a sedentary hand packer, and 1,000 jobs as an inspector/checker/weigher in the regional economy. The VE further testified that if a person took frequent unscheduled breaks or missed two or more days a month he would not be employable.

**G.     The ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since he applied for Supplemental Security Income and that he suffered from severe impairments, including ulcers, acid reflux disease, hypertension, depression, and fungus bacteria. However, the ALJ found that Plaintiff's impairments did not meet or equal any medical listing, and Plaintiff was therefore not disabled. The ALJ found that Plaintiff retained the functional capacity to perform sedentary work but could not engage in frequent bending, kneeling, crouching, or stooping; that Plaintiff had the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently; and that Plaintiff had the mental RFC to interact occasionally with the public and co-workers in a team environment. In addition, the ALJ found that Plaintiff's subjective testimony concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ALJ's residual functional capacity ("RFC") assessment. Based upon this RFC, the ALJ concluded that Plaintiff could not perform his past relevant work but could perform 6,500 jobs in the national economy.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will

6

reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v.*

*Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Do(es) the impairment(s) meet or

equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite h[is] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id.* at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by (1) providing a legally insufficient credibility determination; (2) placing undue emphasis on the ME's testimony, failing to consider the combination of Plaintiff's mental and physical impairments, and ignoring the discrepancy in the GAF scores[1] in determining Plaintiff's RFC; and (3) providing the VE with an

---

[1] The GAF score reflects a clinician's judgment of an individual's psychological, social, and occupational functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 1994) (DSM IV). A GAF score of 51-60 means that the claimant has moderate symptoms or moderate difficulties with social and occupational functioning, and a score of 41-50 signifies serious symptoms or serious impairments with social and occupational functioning.

9

incomplete hypothetical and failing to inquire about the accuracy of the VE's testimony in violation of SSR 00-4p. The Commissioner argues that the ALJ's findings are supported by substantial evidence and that the ALJ complied with the relevant legal requirements.

**A.     Credibility Finding**

Plaintiff argues that the ALJ issued a boilerplate statement about Plaintiff's credibility and failed to consider that Plaintiff's condition worsened because he had no insurance and lacked financial resources. The Commissioner asserts that the ALJ's determination is supported by substantial evidence.

The Social Security Regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statement about his symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;

(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Plaintiff argues that the ALJ's finding that Plaintiff's statements "are not credible to the extent they are inconsistent with the above residual functional capacity assessment," is an impermissible boilerplate statement. The Commissioner argues that the ALJ properly evaluated Plaintiff's credibility in light of the medical evidence.

If the sentence cited by Plaintiff encompassed the totality of the credibility finding in the ALJ's decision, it might indeed be improper. However, the ALJ's opinion reflects that he considered Plaintiff's medical history, including the findings of multiple treating physicians, in

11

reaching the conclusion that Plaintiff's complaints about his physical symptoms were overstated. For example, the ALJ took into account the physician's report from May 14, 2008, which noted that Plaintiff did suffer from hypertension and ulcers but indicated that his impairments were not severe. The ALJ also referred to a notation in Plaintiff's treatment records from June 18, 2008, explaining that Plaintiff's ulcers and reflux could be medically managed and did not support an application for disability benefits. As the Commissioner argues, the ALJ gave substantial weight to the findings of Plaintiff's treating physicians before concluding that Plaintiff's complaints of disabling pain were not credible.

Plaintiff also argues that the ALJ erred in discounting the severity of Plaintiff's mental condition on the basis of Plaintiff's lack of treatment for that condition. Plaintiff argues that his failure to seek treatment before 2008 was attributable to lack of insurance and financial resources.

Although the ALJ noted that Plaintiff did not receive regular psychiatric treatment until two years after his onset date, the ALJ did not place substantial weight on this point. On the contrary, the ALJ spent several paragraphs evaluating Plaintiff's mental treatment records, the ME's opinion, and Plaintiff's own statements before reaching a conclusion on Plaintiff's credibility regarding his mental condition. For example, the ALJ noted that Dr. Godbolt did not prescribe any additional medication after meeting with Plaintiff or place any serious limitations on Plaintiff's interaction with the public. The ALJ also took into account Plaintiff's testimony that if he did not have stomach problems, he could return to work. In addition, the ALJ placed substantial weight on the ME's evaluation of Plaintiff's mental treatment records, including the records from Dr. Godbolt and Plaintiff's social workers. Plaintiff has failed to show that the ALJ's careful consideration of Plaintiff's mental health treatment led to a "patently wrong" credibility determination. *Prochaska*,

454 F.3d at 738.

The ALJ's credibility determination is afforded substantial deference by the reviewing court and will not be disturbed here.

**B.      Residual Functional Capacity Assessment**

Plaintiff argues that the ALJ erred in his RFC determination by placing undue emphasis on the ME's testimony about Plaintiff's psychological issues, failing to consider the combination of Plaintiff's impairments, and ignoring the repeated documents reporting a GAF score of 50, which indicates a disabling impairment. The Commissioner contends that the ALJ properly determined Plaintiff's RFC after weighing all the evidence.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at a RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id*. Although the ALJ need not discuss all the evidence, he must consider all the evidence that is relevant to making

13

a determination of disability and give enough information to allow for meaningful review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002; SSR 96-8p. "SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment." *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006).

Plaintiff argues that the ALJ erred by placing undue emphasis on the ME's testimony about Plaintiff's mental impairments and failing to include the limitations given by treating psychiatrist, Dr. Godbolt, in the RFC determination. In particular, Plaintiff argues that the limitations involving Plaintiff's interaction with supervisors should have been included in the RFC. The Commissioner argues that the record fully supports the ALJ's restrictions on Plaintiff's social functioning.

In making the decision regarding a claimant's disability, the ALJ "will always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [he] receive[s]." 20 C.F.R. § 416.927(b). Additionally, the ALJ will "evaluate every medical opinion [he] receive[s]." 20 C.F.R. § 416.927(d). State Agency physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(I). Therefore, the ALJ must consider the findings of State Agency medical consultants. *See id*.

In evaluating medical opinions, the ALJ should generally give greater weight to treating physicians than non-examining physicians. *See* 20 C.F.R. § 416.927(d)(1). In this case, the ALJ gave significant weight to the ME testimony but did not disregard the evidence provided by Plaintiff's treating physicians. The ME summarized the medical evidence, including Dr. Godbolt's findings, without making any independent conclusions about Plaintiff's psychological condition or disregarding the conclusions of Plaintiff's treating physicians. The ME concluded his testimony by affirming Dr. Godbolt's finding testifying that Plaintiff should not interact primarily with the public.

14

When Plaintiff met with Dr. Godbolt on March 6, 2008, Dr. Golbolt diagnosed him with intermittent explosive disorder and suggested anger management classes. However, she did not prescribe medicine or arrange a second appointment. In her December 10, 2008, assessment, Dr. Godbolt concluded that Plaintiff had a "fair" ability to relate to co-workers, deal with the public, use judgment, interact with supervisor(s), deal with work stresses, behave in an emotionally stable manner, and relate predictably in social situations. Fair, in this context, means that Plaintiff's "ability to function in this area is seriously limited but not precluded."

A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe*, 425 F.3d at 351. Contrary to Plaintiff's assertions regarding her records, Dr. Godbolt's reports do not indicate that Plaintiff has a special sensitivity to supervisors that warrants consideration beyond what was given by the ALJ.

Plaintiff also argues that the ALJ failed to consider the combination of Plaintiff's mental and physical impairments. Although the ALJ discounted Plaintiff's complaints about the severity of his alleged disabilities individually, the ALJ must consider the "combined effect of all [Plaintiff's] impairments without regard as to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. "Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling." *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). Even if the ALJ correctly determined that none of Plaintiff's impairments were disabling on their own, "that would only justify discounting their severity, not ignoring them altogether." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citations omitted).

15

In this case, the record does not reflect that the ALJ considered the combined effect of Plaintiff's physical and mental impairments. "An ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Id.* (citations omitted). The ALJ failed to thoroughly explain his analysis, merely stating his conclusion, which prevents the Court from carrying out a meaningful review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002; SSR 96-8p. Accordingly, the Court will remand the case for thorough consideration of the combined effect of all of Plaintiff's impairments, both physical and mental, even those that are not severe in and of themselves.

In addition, Plaintiff argues that the ALJ did not take into account Plaintiff's GAF score of 50, which indicates a disabling mental limitation. The Commissioner argues that Dr. Godbolt accurately assigned Plaintiff a GAF score of 60 and that multiple instances of recorded scores of 50 were transcription errors. At the hearing, the ME dismissed inconsistencies in the social workers' reports as a "computer thing." However, the ALJ did not address the GAF score discrepancy in his decision.

An ALJ's "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p at *7. "SSR 96-8p requires that medical source opinions must always be considered and addressed by the ALJ in the RFC assessment, and if it conflicts with the ALJ's conclusions then the ALJ must explain why it was not adopted." *Conrad*, 434 F.3d at 991.

The ALJ did not address the numerous GAF scores of 50, indicating serious limitations, recorded by the social workers between March 5, 2008, through March 24, 2009, apparently

16

accepting the ME's conclusion that Plaintiff's GAF score was 60, indicating moderate limitations, without eliciting further explanation. Because of this conflict in the record, it is not apparent whether Plaintiff's limitations are moderate, indicating an ability to work, or serious, precluding him from successfully holding a job.

On remand, the ALJ is directed to fully consider each of the Plaintiff's alleged physical and mental impairments, including their cumulative effect, and provide a logical bridge from the evidence to his conclusion, including a description of the medical evidence on which he bases his determination. Furthermore, the ALJ is directed to address Plaintiff's GAF score and its impact on the RFC determination. The ALJ is reminded that, if "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision," the ALJ may order a consultative examination to develop the record and resolve any conflict or ambiguities. 20 C.F.R. § 416.919(b).

### C. Vocational Expert Testimony

Plaintiff argues that the ALJ erred by failing to include all of his mental limitations in the hypothetical presented to the VE – in particular, limits in relating to the public, coworkers, and supervisors – and by failing to inquire about any possible conflict between the VE's testimony and the DOT. The Commissioner argues that the ALJ was not required to make any inquiry about the DOT because there was not an apparent conflict between the testimony of the VE and the DOT.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the

17

claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

"Under SSR 00-4p, ... the ALJ has an affirmative responsibility to ask if the VE's testimony conflicts with the DOT, and if there is an apparent conflict, the ALJ must obtain a reasonable explanation." *Terry v. Astrue*, 580 F.3d at 477. Specifically, SSR 00-4p requires:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000). "SSR 00-4p places an affirmative duty on the ALJ to resolve conflicts between the evidence the VE has provided and the Dictionary of Occupational Titles after the VE has testified. The ALJ cannot transfer his duty to the VE." *Kallio v. Astrue*, No. 2:07-CV-406, 2009 WL 500552, at *9 (N.D.Ind. Feb. 27, 2009) (citations omitted). It is the responsibility of the ALJ to resolve inconsistencies between the VE's testimony and the DOT. *Prochaska*, 454 F.3d at 736.

Because the case is being remanded for other reasons described above, new VE testimony will need to be obtained based on the appropriate RFC findings. The ALJ is cautioned that he must incorporate all relevant limitations in his questioning of the VE.

**D.  Remedy**

Finally, Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been

18

resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. Here, the ALJ's opinion was not supported by substantial evidence because he failed to develop the record, leaving several issues unresolved. Further, although Plaintiff requests an award of benefits, he fails to present a developed argument in favor of doing so.

The ALJ must address the combined effect of Plaintiff's physical and mental impairments, reconsider the question of the GAF score, including ordering a new evaluation if he is unable to resolve the discrepancy, and amend the hypothetical to the VE accordingly. These are issues that can only be resolved through further proceedings on remand. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

The Court finds that the ALJ failed to sufficiently articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning. *See, e.g., Scott*, 297 F.3d at 595. An ALJ must give enough information for the reviewing court to consider his reasoning and be assured that all of the important evidence was properly considered. In this case, the ALJ failed to consider the combination of Plaintiff's physical and mental impairments in his RFC assessment and failed to resolve the discrepancy between the conflicting GAF scores. Therefore, to this extent the Court **GRANTS** the Plaintiff's Memorandum in Support of Summary Judgment or Remand [DE 21] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 15th day of August, 2011.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record